FIRST NAT. BANK IN MADILL · v. AYRES et al.

No. 34931.   May 6, 1952.

Rehearing Denied July 29, 1952.

246 P. 2d 749.

Little & Hamill and Welch & Welch, Madill, for plaintiff in error.

Pryor Faulk, Co. Atty., Marshall County, Madill, Otey, Johnson & Evans, Ardmore, and Satterfield, Franklin & Harmon, Oklahoma City, for defendants in error.

HALLEY, V. C. J.   This action was commenced in the district court of Marshall county, Oklahoma, by the First National Bank in Madill against M. U. Ayres, county clerk, and Claude Allen, county treasurer, of Marshall county, seeking a writ of mandamus to require the clerk and treasurer to issue, register, and deliver warrants to the plaintiff in payment of certain claims held by it against Marshall county.

Certain individuals and the St. Louis-San Francisco Railway Company were permitted to intervene as taxpayers in Marshall county.   The facts were stipulated, and after argument the court denied the writ upon the ground that the claims sought to be collected were illegal and void because based upon an unlawful appropriation, made after the close of the fiscal year in which the indebtedness was incurred, and because, at the time it was incurred, it was in excess of appropriations available for its payment.   The plaintiff has appealed, and will be referred to herein as "plaintiff", and the defendants and interveners as "defendants."

The following pertinent facts were stipulated: Prior to the close of the fiscal year 1949-1950, the appropriations previously made for the "Charity Fund" for Marshall county became exhausted through the rising cost of supplies necessary in caring for the poor, and the county commissioners incurred obligations in excess of existing appropriations. The commissioners anticipated surplus funds would be created and unexpected and unencumbered balances would occur in some appropriated accounts at the end of said fiscal year, and intended to satisfy obligations in excess of appropriations by supplemental appropriations.

On June 1, 1950, the commissioners petitioned the excise board for the cancellation and transfer of certain ac-

counts and supplemental appropriations. At that time there existed $2,102.19 in unencumbered balances in certain funds and $5,983.02 cash surplus, all available for supplemental appropriations. The commissioners requested the excise board to transfer such available amounts to meet a deficiency existing in a number of funds and a deficiency in the Charity Fund of $2,283.51, and to make supplemental appropriations of the cash surplus available to the other accounts named in their request.

The supplemental appropriations and transfer of accounts included $2,283.51 for the Charity Fund, and such sum and the amount requested for other departments and accounts did not exceed the amount available for supplemental appropriations and transfer, and did not exceed the revenue available for the fiscal year 1949-1950.

One June 27, 1950, the excise board approved the request of the commissioners except as to the $2,283.51 requested for the Charity Fund, which was tabled for further consideration.

On July 24, 1950, the excise board approved the supplemental appropriation for the Charity Fund in the sum above mentioned, and the commissioners approved the claims here in controversy for that amount. The county clerk refused to issue warrants for the payment of plaintiff's claims, and the county treasurer refused to register such warrants, if issued.

The debts created by the commissioners did not exceed the revenue available for the fiscal year 1949-1950. The supplemental appropriations were made from a cash surplus and unencumbered and unexpended funds in appropriated accounts for that fiscal year.

The Charity Fund appropriation was authorized by sec. 31, Title 56, O. S. 1951, and the supplemental appropriation was requested in accordance with the provisions of sec 292, Title 68, O. S. 1951. The defendants' contention that the order of the excise board of July 24, 1950, is invalid, is based upon the ground that it was made after the close of the fiscal year ending June 30, 1950. This raises the issue of whether or not a transfer of funds and the supplemental appropriation could be made after June 30, 1950, the last day of the fiscal year. Plaintiff contends that such order might be made at any time up to September 30, 1950, under the express terms of H. B. 370, S. L. 1947, being §§310.4 and 310.5, Title 62, O. S. 1951, which are as follows:

"(Sec. 310.4) - Provided that all unencumbered balances as shown by the officer charged with keeping the appropriations and expenditure records of the county or municipality on hand at the close of day June 30, may remain as a credit for said fiscal year up to the close of day September 30, next. Said officer charged with keeping the appropriation and expenditure records of the county or municipality shall at any time during the month of July advertise in a newspaper of general circulation in the county and shall cause to be published for two (2) consecutive times if in a daily newspaper and once (1) if in a weekly newspaper, notice in the following form:

" 'Public Notice—All persons having an indebtedness or claim against_____ Municipality are hereby notified that a claim, purchase order, or contract must be recorded in the office of_____ Clerk on or before September 30, 19____, covering all debts now unpaid and incurred during the period beginning on July 1, 19____ and ending on June 30, 19____ or said account shall be void and forever barred.

" '_____ Clerk or Encumbering Officer.'

"Provided further that the provisions of this Act shall not be so construed to allow the incurring of a new indebtedness during the months of July, August, and September, chargeable to the appropriation account of the immediately preceding fiscal year. Laws 1947, p. 391, Sec. 4."

"(Sec. 310.5) - Provided all surplus reserved for unencumbered balances of appropriations for the prior fiscal year on hand at the close of day September 30, may be appropriated by

supplemental appropriation to current expense purposes in the current fiscal year in the manner now provided by law. In the event of the recording of an estimated encumbrance or in the event of an increase in the cost price of supplies, equipment, materials, etc., these underestimations may be provided for during the three (3) months period by the cancellation of appropriations made by the County Excise Board prior to June 30, subject to the approval both of the governing board and the officer in charge of the department or appropriation account only in instances as hereinabove set forth and only in amounts sufficient to pay such increased encumbrances, and by reappropriation to the appropriation accounts in which an underestimate encumbrance was made, all in the manner as now provided by law for the making of supplemental appropriations. Laws 1947, p. 392, Sec. 5."

Sec. 292, Title 68, O. S. 1951, provides in part that:

"Whenever the public welfare or the needs of any county * * * shall require, the Excise Board may, on call of the Chairman, convene at any time for the purpose of making supplemental or additional appropriations for current expense purposes; * * *."

The 1947 Act, above quoted, states that " * * * all unencumbered balances * * * on hand at the close of day June 30, may remain as a credit for said fiscal year up to the close of day September 30, next." It seems clear that it was intended that unencumbered balances remain as a credit "for said year." This plain statement must mean that such unencumbered balances and surplus are available to pay lawful claims created during "said fiscal year." Such provision does not violate the inhibition against using revenue for one fiscal year to pay debts created during another fiscal year.

We think the holding of this court in Smith v. Board of County Commissioners, 201 Okla. 652, 208 P. 2d 177, cited by defendants, is not controlling here, because the 1947 Act was not there involved or discussed. It is only mentioned in the remarks of the trial judge in announcing his decision. That was an original action by a county assessor for a writ of mandamus requiring that a supplemental appropriation be made to enable him to carry out certain duties required of him by the provisions of sec. 15.17, Title 68, O. S. 1951. The district court denied the writ. Unappropriated funds were available. This court assumed original jurisdiction, as it was found that the time was too short for an appeal to reach this court and be decided during the current fiscal year. This case was decided in 1949, and it was announced in the opinion that the supplemental appropriation would have to be completed within the current fiscal year. The 1947 Act does not appear to have been presented or considered in that case.

We are cited to no case where the exact issue presented here has been passed upon by this court. There is no doubt but that, prior to the 1947 Act, a supplemental appropriation such as is sought here had to be made prior to the close of the current fiscal year.

Defendants say that the additional three months mentioned in the 1947 Act should apply only to those items purchased on estimated cost, and that this provision was intended to authorize supplemental appropriations to cover such underestimates or increases in cost. We cannot agree with this contention. Section 310.5 expressly states that it applies to "an estimated encumbrance or in the event of an increase in the cost price of supplies, equipment, materials, etc., these underestimations may be provided for during the three (3) months' period by the cancellation of appropriations made by the county excise board prior to June 30, * * *." The record shows that the appropriation of $2,492.59 for the 1949-1950 fiscal year for the maintenance of the plaintiff, had, on May 31, 1950, a balance of only 96c. There must have been an underestimate of the amount needed in the fund set

up to care for the poor, and there may have been an increase in the cost of services, equipment, etc.

We think the plain language of the 1947 Act discloses the intention of the Legislature to extend for 90 days beyond June 30th, the established close of the fiscal year, the authority of county officials to readjust county finances to meet the necessities that had developed during the preceding months of the fiscal year, by canceling previous appropriations which had proved to be beyond the actual needs of the various departments. Supplemental appropriations have always been the only established method available to accomplish that result. Only funds available for such fiscal year may be so used, and only for claims incurred and approved for the same fiscal year.

If the above interpretation of the 1947 Act is not correct, we can conceive of no real reason for its passage, and no worthy purpose would be accomplished thereby. We can see no reason for retaining unencumbered balances on hand at the close of the fiscal year as a credit for that fiscal year for 90 days after the close thereof, unless it be intended to have them available for the payment of valid claims incurred during that year. Prior to the 1947 Act, such funds became a surplus immediately available to meet the needs for the next fiscal year. These funds, if any remain at the close of day September 30, immediately become available for the next fiscal year.

The judgment of the trial court is reversed, with instructions to grant the writ as prayed for.

WELCH, CORN, JOHNSON, and O'NEAL, JJ., concur. DAVISON and BINGAMAN, JJ., concur in conclusion. GIBSON, J., dissents.